IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WALTER PETERS,
    Plaintiff,

vs.                                          3:08cv545/RV/MD

WARDEN CHARLES HALLEY, et al.
    Defendants.

## **O R D E R**

This cause is before the court upon plaintiff's amended civil rights complaint filed pursuant to Title 42 U.S.C. §1983, docketed by the clerk on December 24, 2008  From a review of this complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to some or all of the named defendants.   It also appears impossible, from the dates of the incidents complained of, that plaintiff could have exhausted his administrative remedies as to each claim.  Any unexhausted claims are subject to dismissal.  The court will therefore allow the plaintiff an opportunity to clarify his allegations in a second amended complaint.

Plaintiff was incarcerated at Century Correctional Institution at the time the events giving rise to this complaint took place.  Named as defendants in this action are Warden Charles Halley, Captain Chance, Sgt. Stokes, Sgt. Kent, C.O. Scarbrough, and Col. Morrison, all of CCI. Plaintiff mentions more than one incident in his complaint.  He alleges that defendant Halley refused to respond to grievances he filed from September through December of 2008, and that this allowed defendant Stokes to attack or harass him based on his race. Plaintiff claims that Stokes physically assaulted him and sprayed him with mace on November 27, 2008 despite knowing of plaintiff's breathing issues.  He further

contends that this assault was based on plaintiff's race, although the basis for this belief is unclear. Plaintiff alleges that defendant Chance denied him use of his asthma pump after this incident. Then, plaintiff complains that on December 7, 2008, Officer Morrison gave him a pillow for his cell and in which Morrison had planted tobacco contraband. This contraband was discovered by defendants Kent and Scarbrough during a "retaliatory" cell search on the same day, which plaintiff also claims was racially motivated. Finally, plaintiff alleges that on December 20, 2008, defendants Morrison and Kent "enforced" the racially discriminatory cell searches. Plaintiff claims that myriad constitutional rights were violated, including his First, Eighth, Ninth and Fourteenth amendment rights, and that he was deprived of an unidentified liberty interest and denied equal protection.

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), <u>overruled on other grounds</u> *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Duke v. Cleland*, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing *Parratt*).

To establish an equal protection claim, a prisoner must demonstrate that (1) "he is similarly situated with other prisoners who received" more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Sweet v. Secretary, Dept. Of Corrections,* 467 F.3d 1311 (11th Cir. 2006) (citing *Jones v. Ray,* 279 F.3d 944, 946-947 (11th Cir. 2001); *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)). Plaintiff did not set forth any facts in support of his conclusory allegations that he was discriminated against based on his race. Likewise, he has not set forth any facts in support of his claim that a "liberty interest" was violated.

Plaintiff also alleges that one or more of the defendants retaliated against him. It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights, such as filing a grievance concerning the conditions of his imprisonment. *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome*, 795 F.2d 964 968 (11th Cir. 1986); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986). Retaliation against an inmate for exercising a constitutional right may be a constitutional violation even if no separate and additional constitutional violation ensues. *Farrow,* 320 F.3d at 1248; see also *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) (the retaliatory penalty need not rise to the level of a separate constitutional violation to state a claim); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (an inmate may still present a First Amendment retaliation claim even though complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials); *Wilson v. Silcox*, 152 F.Supp.2d 1345, 1351 (N.D. Fla. 2001)(citing cases); *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (retaliation based on a prisoner's exercise of his First Amendment rights violates the constitution). This is because "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (quoting *Thomas,* 880 F.2d at 1242).

Although prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right, *Adams v. James*, 784 F.2d 1077, 1079-80 (11th Cir. 1986); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985), broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005); *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Flittie v. Solem,* 827 F.2d 276, 281 (8th Cir. 1987); *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987). In order to state a claim, the retaliation complaint must identify both the retaliatory conduct and the underlying act that prompted the retaliation. See *Harbin-Bey*, 420 F.3d at 579; *Higgs v. Carver*, 286 F.3d 437, 439 (7th

Cir. 2002).  A prisoner-plaintiff in a retaliation case must first prove that the conduct which led to the alleged retaliation was constitutionally protected. *Harbin-Bey,* 420 F.3d at 579; *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001).  He must then show that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); see also *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (plaintiff must then "sufficiently allege facts" establishing that the actions taken against him were in retaliation for, for instance, filing lawsuits and accessing the courts, and would not have happened but for the retaliatory motive); *Harbin-Bey*, 420 F.3d at 579 (also requiring that the retaliatory act "would deter a person of ordinary firmness); *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983).  Adverse actions taken against an inmate in retaliation for filing grievances violate the inmate's constitutional rights. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989).  However, plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation. *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 750 (1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

A causal connection between the protected conduct and the allegedly retaliatory act *may* be alleged by a chronology of events that create a plausible inference of retaliation. *See Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); cf. *McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005) (chronology of events is not *required* to state a claim under federal notice pleading standards). For instance, the temporal proximity of an allegedly retaliatory misbehavior report to a grievance filed by the prisoner may serve as circumstantial evidence of retaliation. *Gayle v. Gonyea*, 313 F.3d 677, 683-84 (2nd Cir. 2002); see also *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)("A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'").

In considering a plaintiff's allegations, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)).  And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury . . . " *Crawford-El*, 118 S.Ct. at 1596-97; *Harris*, 65 F.3d at 916-17; *National Archives and Records Admin. v.* Favish, 541 U.S. 157, 174, 124 S.Ct. 1570, 1581-1582, 158 L.Ed.2d 319 (2004) (the presumption of legitimacy afforded to the official conduct of government agents is only displaced by clear evidence to the contrary) (citations omitted); *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).  Plaintiff has failed to allege facts showing the necessary causal connection between any protected acts and alleged retaliation.

Plaintiff also alleges that he was sprayed with mace.  The use of mace or pepper spray is an accepted non-lethal means of controlling unruly inmates.  *Danley v. Allen,* 540 F.3d 1298, 1307  (11th Cir. 2008) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (citing cases); *cf. Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002)).  The use of chemical agents such as pepper spray or mace is evaluated just like any other kind of force.  *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1244-45 (11th Cir. 2003); *Fischer v. Ellegood*, 238 Fed.Appx. 428 (11th Cir. 2007).  To establish a claim for excessive force in violation of the Eighth Amendment, a plaintiff must show (1) that the force was "sadistically and maliciously applied for the very purpose of causing harm," *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002), and (2) that more than a *de minimis* injury resulted. See *id.; Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (application of mace, without more, is insufficient to state a constitutional violation).  The the use of mace, tear gas, or other similar chemical agents does not constitute cruel and unusual punishment when reasonably necessary to subdue a "recalcitrant prisoner," even where the prisoner is locked in his cell or is handcuffed.  *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984); *cf. Vinyard v. Wilson,* 311 F.3d 1340 (11th Cir. 2002) (using pepper spray during

an arrest can constitute excessive force when crime is minor infraction, arrestee is secured and there is no threat to the officer or others) (citing cases).  Other circuits as well have approved the use of chemical agents in small quantities to control a "recalcitrant inmate." *Soto*, F.2d at 1270-71 (citing cases); *Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000) (citing cases); *Baldwin v. Stalder*, 137 F.3d 836, 841 (5th Cir. 1998); *Benjamin*, supra, (citing cases); *Spain v. Procunier*, 600 F.2d 189, 195-96 (9th Cir. 1979) (citing cases).

The plaintiff has failed to establish the objective prong of the excessive force standard.  *See, e.g., Jones v. Shields*, 207 F.3d at 495 (concluding that administration of chemical agent resulted in only a *de minimis* injury for Eighth Amendment purposes, where, despite prisoner's "somewhat elaborate claims of pain, inmate's own statements revealed that the effects of the chemical cleared within 45 minutes; he was twice taken to the infirmary and treated with water during that period, and a medical examination the day after the incident revealed no lingering effects); *Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998) (affirming summary judgment in favor of detention center employees where an inmate lacked medical evidence of actual injury caused by liquid thrown into his eyes); *Fischer v. Ellegood*, 238 Fed.Appx. 428 (11th Cir. 2007) (affirming summary judgment where plaintiff failed to mention any injury, and there was no evidence of sadistic or malicious intent in application of mace during a "shakedown").

With respect to plaintiff's claim against Warden Halley, plaintiff should also be aware that *respondeat superior*, without more, does not provide a basis for recovery under section 1983.  *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Goebert v. Lee County,* 510 F.3d 1312, 1331 (11th Cir. 2007); *Cottone v. Jenne, 326* F.3d 1352 (11th Cir. 2003); *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995).  "Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); see also *Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001)*; Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).  Thus, one cannot be held liable for the

actions or omissions of others, but can only be held responsible if he participated in the deprivation of plaintiff's constitutional rights. *Marsh, supra; Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez v. Reno*, 325 F.3d at 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Fla. Dept. of Labor & and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998))); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985). A supervisor ordinarily cannot be held liable under a *respondeat superior* theory for the acts and omissions of individuals acting in contravention to policy. *Tittle v. Jefferson County Commission,* 10 F.3d 1535, 1540 (11th Cir. 1994). However, the causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or when facts support an inference that the supervisor "directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Goebert v. Lee County,* 510 F.3d 1312, 1331 (11th Cir. 2007) (citation omitted); *Cottone*, 326 F.3d at 1360. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone, supra,* (quoting *Gonzalez*, 325 F.3d at 1234).

      In amending, plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law. If plaintiff chooses to file an amended complaint, he must completely fill out a new civil rights complaint form, that has been marked "Second Amended Complaint." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, plaintiff should clearly describe <u>how</u> <u>each named</u> <u>defendant</u> is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and

*Case No: 3:08cv545/RV/MD*

times of the alleged unconstitutional acts. It is essential that the facts relating to each defendant be set out clearly and in detail because in civil rights cases, more than conclusory and vague allegations are required to state a cause of action. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)*; GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1366 (11th Cir. 1998); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). If plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint. In the section entitled "Statement of Claim," plaintiff must state what rights he contends have been violated, and he must provide support in the statement of facts for the claimed violations. Plaintiff is advised that the second amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Plaintiff should file the second amended complaint with an original signature with the Court and keep an identical copy for himself. Plaintiff should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint. **Plaintiff need not file proof that he has exhausted his administrative remedies, but he is advised that his administrative remedies with respect to each claim he raises must have been exhausted prior to December 10, 2008, the date he filed this case. Any unexhausted claims will be subject to dismissal**. Finally, plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.

Accordingly, it is ORDERED:

1. The clerk of court is directed to forward to the plaintiff a civil rights complaint form for use in actions under 42 U.S.C. §1983. This case number and the words "Second Amended Complaint" should be written on the form.

2. The plaintiff shall have **thirty (30) days** in which to file a second amended civil rights complaint, which shall be typed or clearly written and submitted on court forms.

3. Failure to submit a second amended complaint as instructed will result in a recommendation of dismissal of this action.

*Case No: 3:08cv545/RV/MD*

DONE AND ORDERED this 10th day of February, 2009.


/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**